IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE: AFFILIATED FOODS SOUTHWEST,       CASE NO.: 4:09-bk-13178
   INC., DEBTOR                                           CHAPTER 7

RICHARD L. COX                                  PLAINTIFF

V.                  AP NO.: 4:11-ap-01161

SWISS-AMERICAN, INC.,
SWISS-AMERICAN IMPORTING COMPANY,
JOHN DOE I, JOHN DOE II, JOHN DOE III,
JOHN DOE IV, AND JOHN DOE V               DEFENDANTS

## MEMORANDUM OPINION AND ORDER DENYING RULE 11 SANCTIONS AND AWARDING FEES AND COSTS

On May 4, 2011, Richard L. Cox, the chapter 7 panel trustee ("Trustee") in the Affiliated

Foods Southwest, Inc. ("Affiliated Foods") bankruptcy proceeding, filed a preference and

fraudulent transfer action ("Complaint") against, inter alia, Swiss-American, Inc. ("Swiss-

American") and Swiss-American Importing Company ("Swiss Importing").  Swiss-American

tested the sufficiency of the Complaint by filing *Defendant Swiss-American, Inc.'s Motion to*

*Dismiss* ("Motion to Dismiss") on June 3, 2011.  Shortly thereafter, on June 14, 2011, Swiss-

American also filed *Defendant Swiss-American, Inc.'s Motion for Sanctions* ("Motion for

Sanctions") seeking sanctions against the Trustee and his attorneys, Thomas S. Streetman,

Robert Bynum Gibson, III, and Streetman, Meeks & Gibson, PLLC ("Respondents") pursuant to

Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011").[1]

The Respondents filed a *Response of Plaintiff and His Attorneys to Swiss-American,*

*Inc.'s Motion for Rule 11 Sanctions* ("Answer") denying that sanctions were appropriate.

---

[1]The Trustee, Richard L. Cox, is also an attorney.

Additionally, Respondents asked for "all costs and attorneys fees in defense of the motion

pursuant to the provisions of Rule 9011" and for sanctions against Swiss-American and its

attorneys, Ryan C. Hardy ("Hardy") and Spencer Fane Britt & Browne, LLP ("Spencer Fane"),[2]

for a perceived meritless Motion for Sanctions.

The court held a hearing on the Motion to Dismiss on October 13, 2011, and entered an

order on that date.  The court's order denied the Motion to Dismiss as to the Trustee's preference

action but granted the Motion to Dismiss as to the constructive fraud count.  The court gave the

Trustee an opportunity to amend his Complaint and directed Swiss-American to file an answer or

other responsive pleading on or before November 29, 2011.

Prior to any amendment or the necessity of Swiss-American filing an answer, the Trustee

voluntarily dismissed the Complaint.  The court entered an *Order Granting Dismissal with

Prejudice* on October 18, 2011, dismissing the Complaint but retaining jurisdiction to hear the

Motion for Sanctions.  The court, on March 9, 2012, heard the Motion for Sanctions.  At the

conclusion of Swiss-American's case, the court granted the Respondents' motion for a judgment

on partial findings under Federal Rule of Bankruptcy Procedure 7052(c).  As part of its oral

ruling, the court denied the Respondents' request to award them the expenses and attorney's fees

they incurred in opposing the Motion for Sanctions.

Before the entry of a written order, the Respondents filed their *Motion for

Reconsideration and Findings of Fact and Conclusions of Law* ("Motion for Reconsideration")

renewing their request for fees, expenses, and sanctions against Swiss-American, Hardy, and

---

[2]The Respondents did not seek fees, expenses, or sanctions against Jess L. Askew,
Andrew King, or Williams & Anderson, PLC, who served as local counsel for Swiss-American.

Spencer Fane.  In the interest of judicial economy, this court, on March 20, 2012, entered its *Order Setting Hearing*, which: (1) set the Motion for Reconsideration and the response thereto for hearing on April 18, 2012; and (2) stated that the court would enter a single order subsequent to the April 18, 2012 hearing on both the Motion for Sanctions and the Motion for Reconsideration.  The court heard the Motion for Reconsideration on April 18, 2012, and took the matter under advisement.

The Motion for Sanctions is hereby denied.  The court's findings of fact and conclusions of law read into the record on March 9, 2012, are incorporated by reference herein pursuant to Federal Rule of Bankruptcy Procedure 7052.  Further, an examination and reconsideration of the facts and law has sufficiently convinced this court that an award of fees and expenses is warranted by the prosecution of a meritless motion for Rule 9011 sanctions.  For the reasons stated below, the Motion for Reconsideration is granted in part and denied in part.  Pursuant to Rule 9011(c)(1)(A), Respondents are awarded reasonable expenses and attorney's fees incurred in the sum of $16,976.88 against Swiss-American.  Pursuant to Federal Rule of Bankruptcy Procedure 7054, the court will enter a separate judgment to this effect.  The Respondents' request for sanctions as contained in their Answer is denied; their request does not comply with the requirements of Rule 9011(c)(1)(A).

## I.  Jurisdiction

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (H).  The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

3

## II. Findings of Fact

The Trustee filed a very basic preference action against Swiss-American, Swiss Importing, and other defendants in the amount of $83,623.24. (Ex. M3, 2, Mar. 9, 2012.) Concerned whether the transferee was actually a creditor of Affiliated Foods, the Trustee included a constructive fraud count.

The Respondents had a factual and legal basis, which was reasonable under the circumstances, to sue Swiss-American. Specifically, by letter dated March 24, 2011, the Trustee made an initial demand on Swiss-American for seven alleged preferential transfers that occurred between February 4, 2009, and April 1, 2009.[3] (Ex. M1, 7, Mar. 9, 2012.) Four transfers were by check; three were wire transfers. The Trustee addressed his letter to Swiss-American at 4200 Papin Street, St. Louis, Missouri, the address that appeared on the checks in question. (Ex. M1, 7, 18–20, Mar. 9, 2012.)

Swiss-American's counsel, Hardy, replied by his letter dated April 7, 2011, disclaiming liability. (Ex. M1, 10–11, Mar. 9, 2012.) Hardy asserted that Swiss-American had, on April 2, 2009 (one day after the last alleged preferential transfer), purchased substantially all the assets of Swiss Importing. (Ex. M1, 10, Mar. 9, 2012.) According to Hardy, Swiss Importing was an "unrelated entity" and the true beneficiary of the transfers. (Ex. M1, 10, Mar. 9, 2012.)

Hardy also argued that, if a transferee, Swiss-American took as a result of an asset purchase agreement and, thus, for value without notice of the voidability of the transfers. (Ex. M1, 10, Mar. 9, 2012.) Hardy went on to suggest alternative defenses for Swiss-American,

---

[3]Affiliated Foods filed for relief under chapter 11 on May 5, 2009, and later voluntarily converted to a chapter 7.

4

assuming arguendo that Swiss-American was the transferee.  These defenses included the new-value defense and an assertion that the three wire transfers were pre-payments, not payments for antecedent debt.  (Ex. M1, 10, Mar. 9, 2012.)  With regard to the new-value defense, Hardy noted in his letter, "[b]ecause we have not received all of the records from Swiss-American and its predecessor, this detail is subject to change."  (Ex. M1, 10, Mar. 9, 2012.)

     Because the statute of limitations was about to run, the Trustee proposed a tolling agreement on April 5, 2011, and again on April 10, 2011.  (Ex. M1, 12, Mar. 9, 2012.)  Hardy replied by e-mail, again asserting that Swiss-American did not receive a transfer from Affiliated Foods as all the transfers were to "a different company," Swiss Importing.  (Ex. M2, 2, Mar. 9, 2012.)  In response to Hardy's e-mail, the Trustee provided check and wire transfer documentation, noting that the checks were made payable to Swiss-American and that the wire transfers contained a reference to an "importing company."  (Ex. M1, 13, Mar. 9, 2012.)  Notwithstanding that ambiguity, the Trustee noted that clearly Swiss-American had, at the very least, received payment of the four checks prior to the alleged asset purchase agreement.  (Ex. M1, 13, Mar. 9, 2012.)  The Trustee again offered the option of a tolling agreement to allow time to sort out the transfers.  (Ex. M1, 13, Mar. 9, 2012.)  Otherwise, he would file suit against Swiss-American for the preferences and as a secondary transferee of any preferences involving Swiss Importing.  (Ex. M1, 13, Mar. 9, 2012.)  Hardy's response was to offer the declaration of a Swiss-American officer that Swiss-American did not receive the transfers and that its purchase of Swiss Importing was in good faith, for value, and without notice.  (Ex. M2, 1, Mar. 9, 2012.)  Hardy refused a request to supply a copy of the asset purchase agreement referenced in his correspondence.

Thereafter, on April 23, 2011, the Trustee's attorneys, Streetman, Meeks & Gibson, PLLC, by Robert Bynum Gibson, III ("Gibson"), made written demand on Swiss-American at 4200 Papin Street, St. Louis, Missouri, for the full amount of the alleged preferential transfers. (Ex. M1, 25, Mar. 9, 2012.) Gibson again offered Swiss-American the option of executing a tolling agreement. (Ex. M1, 25, Mar. 9, 2012.) Hardy responded to Gibson's letter by phone and e-mail, attaching to his e-mail his prior communications with the Trustee. Hardy restated his position that his client, Swiss-American, did not receive transfers from Affiliated Foods. (Ex. M1, 30, Mar. 9, 2012.) Hardy also noted that the endorsements on the checks to Swiss-American were by Swiss Importing and argued that the wire advices reflected the same. (Ex. M1, 30, Mar. 9, 2012.)

No tolling agreement was forthcoming; therefore, the Trustee filed his Complaint. The Complaint included both Swiss-American and Swiss Importing. (Ex. M3, 1, Mar. 9, 2012.) The evidence reflects that the Respondents, both before and after the initial exchange of correspondence with Hardy, took detailed and appropriate steps in formulating and filing the Complaint against both entities.

The Respondents' pre-filing calculus included a number of salient facts, circumstances, and unresolved issues. There were seven apparent transfers to Swiss-American, four by check and three by wire transfer. The wire transfers contained additional "importing company" language. (Ex. M1, 13, Mar. 9, 2012.) The wire transfer advices stated "BNF=Swiss-American," followed by several spaces, then "Importing Co. [or Company] No Address." (Ex. M1, 22–24, Mar. 9, 2012.) The four checks were all made payable to Swiss-American but were deposited by Swiss Importing. (Ex. M1, 18–21, Mar. 9, 2012.) These incongruities gave rise to

6

two legitimate concerns: (1) whether the entity that received each wire transfer or cashed each check was the entity to whom Affiliated Foods owed a debt (thus forming a basis for the constructive fraud allegation); and (2) the exact nature of the relationship between Swiss-American and Swiss Importing with respect to the transfers from Affiliated Foods.

Swiss-American repeatedly declined to execute a tolling agreement to give the parties additional time to further define the relationship between Swiss-American and Swiss Importing. Hardy would not supply a copy of the asset purchase agreement referenced in his correspondence. The self-serving declaration offered by Hardy was no substitute for comprehensive documentation or discovery. Prefiling and without the benefit of discovery, the Trustee was not in a position to analyze the nature of the purchase—whether an asset purchase, stock sale, or merger. A review of the agreement might also have been revealing in the context of notice as between the two entities regarding potentially voidable transfers.

The Respondents' prefiling efforts were not restricted to communications with Hardy. Gibson intently researched the relationship between Swiss-American and Swiss Importing. Gibson visited Swiss-American's website and found a disquieting time line announcement that, in 2009, "Joe Hoff, Swiss-American's president since 2006, purchase[d] the company from brothers Ron & Jerry Weil." (Cox Ex. 3, Mar. 9, 2012.) Gibson correlated the purchase reference with the April 2, 2009 purchase transaction and saw a continuity of management both before and after the alleged arm's-length asset purchase of what Hardy had termed an unrelated entity.

Gibson also researched the records of the Missouri Secretary of State's office. Gibson discovered that on September 3, 1992, Swiss Importing registered Swiss-American as a fictitious

7

name.  (Cox Ex. 4, 2, Mar. 9, 2012.)  The address for both entities is listed as 4245 Papin Street,

St. Louis, Missouri.  (Cox Ex. 4, 2, Mar. 9, 2012.)  Jerry Weil executed this document.  (Cox Ex.

4, 3, Mar. 9, 2012.)  By a filing with the Secretary of State's office on April 2, 2009, and based

upon an amendment to its articles of incorporation on March 30, 2009, Swiss Importing changed

its name to R&J Investors, Inc.  (Cox Ex. 5, 2–3, Mar. 9, 2012.)  Jerry Weil also signed this

document.  (Cox Ex. 5, 3, Mar. 9, 2012.)  On April 6, 2009, over Jerry Weil's signature, Swiss

Importing canceled its use of Swiss-American as a fictitious name.  (Cox Ex. 6, 2, Mar. 9, 2012.)

  Notwithstanding the already fictitious name existence of Swiss-American—not cancelled

until April 6, 2009—Swiss-American filed articles of incorporation with the Missouri Secretary

of State's office on March 20, 2009.  (Cox Ex. 7, 1, Mar. 9, 2012.)  These articles of

incorporation, prepared by Spencer Fane, are sparse.  Patrick J. Sweeney is listed as the

incorporator, and Spenserv, Inc. is listed as the agent for service.  (Cox Ex. 7, 2, Mar. 9, 2012.)

The "Name and address to return filed document" box on the filing references Spencer Fane, 1

N. Brentwood Blvd., Ste 1000, St. Louis, MO 63105.  (Cox Ex. 7, 2, Mar. 9, 2012.)  The same

address is given for Patrick J. Sweeney, the incorporator, and Spenserv, Inc., the agent for

service.  (Cox Ex. 7, 2, Mar. 9, 2012.)

  A few days later, on March 30, 2009, Spencer Fane filed Articles of Merger with the

Missouri Secretary of State's office, merging Swiss-American with JH Acquisitions, LLC.  (Cox

Ex. 8, 2, Mar. 9, 2012.)  Swiss-American is listed as the surviving entity.  (Cox Ex. 8, 2, Mar. 9,

2012.)  The Articles of Merger are signed by Joseph Hoff as President of Swiss-American and as

manager of JH Acquisitions, LLC.  (Cox Ex. 8, 3, Mar. 9, 2012.)  The Articles of Merger recite

that "[t]he executed agreement of merger is on file at the principal place of business of the

survivor," that is, Swiss-American, "located at 4200 Papin Street, St. Louis, MO 63110." (Cox Ex. 8, 2, Mar. 9, 2012.)

Prefiling, the Respondents had reason to believe that Spencer Fane, Hardy's law firm, had created Swiss-American in March 2009, which was run by Joseph Hoff, then merged it with another entity, which was also run by Joseph Hoff, with Swiss-American as the surviving entity. That Swiss-American may have then on April 2, 2009, entered into an insufficiently quantified transaction with Swiss Importing, where Joseph Hoff had been the president since 2006. Swiss Importing also did business as Swiss-American and, for a period of time, had continued to do business as Swiss-American even after Spencer Fane had created the new Swiss-American, which was run by the same Joseph Hoff and located at a nearly identical address (perhaps the same address given the Proof of Claim discussion below). The surviving Swiss-American had the same address as the entity on the checks that predated the April 2, 2009 transaction. No one testified at the sanctions hearing on behalf of Swiss-American. The alleged asset purchase agreement has never been produced, and the relationship between Swiss-American and Swiss Importing remains unclear. Gibson's suspicions concerning notice, the arm's-length nature of the April 2, 2009 transaction, and whether the transaction was actually a merger, stock sale, or merely the continuation of the same business are understandable both prefiling and with the full benefit of hindsight.

Gibson's uncertainty was not lessened by the fact that, prefiling, he had studied a Proof of Claim filed on August 13, 2009, by Swiss-American in the Affiliated Foods bankruptcy. (Cox Ex. 1, Mar. 9, 2012.) The Proof of Claim, in the amount of $108,377.24, states that it is for "Goods Sold" between December 17, 2008, and March 12, 2009. (Cox Ex. 1, 2, Mar. 9, 2012.)

9

This period, of course, predates the April 2, 2009 transaction.  The address on the Proof of Claim itself, as well as the numerous invoices attached, is 4200 Papin Street, the address of the new Swiss-American and, apparently, the same address historically used by Swiss Importing doing business as Swiss-American.  Gibson noted that Swiss-American, Hardy's client, appeared to be asserting a claim for goods sold before the supposed asset purchase agreement.

The Proof of Claim, filed before the Complaint, is by Swiss-American.  At the Motion for Sanctions hearing, Swiss-American introduced the answer filed by R & J Sales and Marketing, Inc. ("RJ") on behalf of Swiss Importing.  Apparently, RJ was originally incorporated and operated under the name Swiss Importing until April 2, 2009, the supposed asset purchase date, but it also conducted business under the Swiss-American name until the same April 2, 2009 date. (Ex. M7, 1, Mar. 9, 2012.)  The Proof of Claim, however, was not filed under the name RJ, Swiss Importing, Swiss Importing doing business as Swiss-American, RJ doing business as Swiss-American, or RJ doing business as Swiss Importing.  On this record, the only Swiss-American entity left standing when the Proof of Claim was filed is Hardy's Swiss-American, and all of the invoices for goods sold and for which Swiss-American now seeks payment predate the alleged asset purchase agreement.  A perfectly valid explanation for the confusion may exist. This could include a term concerning the allocation or settlement of receivables between two companies acting at arms-length.  Also, terms of this nature might have been pertinent to an analysis of Hardy's notice defense.  But Gibson, neither then nor now, had the benefit of an explanation backed by satisfactory documentation.

The address on the four checks—all written before the alleged asset purchase agreement—is 4200 Papin Street, St. Louis Missouri.  (Ex. M1, 18–21, Mar. 9, 2012.)  The

10

Trustee sent his initial March 24, 2011 demand letter to that address.  (Ex. M1, 7, Mar. 9, 2012.)
This letter generated a response from Hardy, not some other lawyer on behalf of RJ.  (Ex. M1,
10–11, Mar. 9, 2012.)  Gibson's subsequent demand letter also went to the same address and
resulted in a phone call and an e-mail response from Hardy, not an attorney on behalf of RJ.
(Ex. M1, 25, Mar. 9, 2012.)  The address on the Proof of Claim is 4200 Papin Street, St. Louis,
Missouri.  (Cox Ex. 1, Mar. 9, 2012.)  The old address of Swiss Importing, apparently doing
business as Swiss-American, is nearly the same (and is the same on old invoices) as the address
of the more recently formed but overlapping Swiss-American, and both were run by the same
president.  Gibson testified that the information before him reflected a continuation of the same
business, perhaps with a change in ownership.

Because the Complaint included Swiss-American, Swiss-American sought Rule 9011
sanctions against the Respondents.  The gravamen of Swiss-American's Motion for Sanctions is
set out in paragraph 13, which states:

> 13.  Mr. Gibson and his law firm violated Rule 9011(b) by filing the adversary
> complaint commencing this proceeding against Swiss-American because all evidence
> indicates that Swiss-American (a) did not receive the Transfers and (b) even if it did
> somehow receive the Transfers, it must have received them in a good-faith purchase
> for value without notice of the avoidability of the Transfers.  Accordingly, the
> allegations in the Complaint violate Rule 9011(b).

(Ex. M1, 4, Mar. 9, 2012.)  The evidence, however, reflects that the Respondents, both before
and after the initial exchange of correspondence with Hardy, took detailed and appropriate steps
in formulating and filing the Complaint against both entities.

The Respondents, without the benefit of facts developed through the discovery process
and faced with a refusal to voluntarily provide pertinent and perhaps dispositive documentation,
acted reasonably in filing suit against both Swiss-American and Swiss Importing.  RJ filed an

11

answer on behalf of Swiss Importing.  Following informal discovery, the Trustee voluntarily

dismissed the Complaint based on information supplied by RJ's counsel that satisfied the Trustee

that the transfers were prepayments.  The Respondents' actions in this regard were consistent

with any trustee in a large chapter 7 researching and filing numerous preference actions,

conducting ongoing research and discovery, and proceeding in light of the information obtained.

A simple answer filed by Swiss-American, followed by the exchange between RJ's counsel and

the Trustee, would have resulted in a dismissal.

        The Respondents retained William David Duke ("Duke") with the law firm of Robinson,

Staley, Marshall & Duke, P.A. to represent them in the context of the Motion for Sanctions.  The

Respondents incurred $379.38 in costs and $16,597.50 in fees for a total of $16,976.88.  (Cox

Ex. 11, 9, Apr. 18, 2012.)  Thomas S. Streetman ("Streetman"), a named Respondent and the

senior partner of Respondent Streetman, Meeks & Gibson, PLLC, testified that he considered

these fees and costs to be reasonable.  Swiss-American did not cross-examine Streetman or offer

testimony contradicting the reasonableness of these fees and expenses.  An examination of the

costs and expenses reflects reasonable and appropriate efforts on the part of Duke and his firm in

representing the Respondents.

        The Respondents also introduced an invoice representing fees of $28,917 and expenses of

$438.10 charged by Gibson and Streetman solely with respect to the Motion for Sanctions.  (Cox

Ex. 12, 27–28, Apr. 18, 2012.)  In their fee application, Streetman and Gibson billed their time at

an hourly rate for their efforts in defending against the Motion for Sanctions just as if they were

representing a client.  Swiss-American did not cross-examine Streetman or offer testimony

contradicting the reasonableness of the requested fees and expenses.

In his remarks at the Motion for Sanctions hearing, Hardy stated that Spencer Fane's ethics committee had reviewed and approved the filling of the Motion for Sanctions. Hardy and Spencer Fane, in a post-trial brief, argued that any award for attorney's fees and expenses in favor of the Respondents should be against Swiss-American, not Hardy or Spencer Fane. In their Answer, the Respondents asked for sanctions and fees from Swiss-American, Hardy, and Spencer Fane. In their post-trial brief, the Respondents encouraged the court to hold Hardy and Spencer Fane principally responsible for the unfounded Motion for Sanctions.

### III. Discussion

#### A. Denial of Rule 9011 Sanctions Against Respondents

At the March 9, 2012 hearing on the Motion for Sanctions, the court denied the relief sought by Swiss-American. The court's oral findings of fact and conclusions of law are incorporated by reference herein pursuant to Federal Rule of Bankruptcy Procedure 7052. It is pertinent to the Motion for Reconsideration to briefly reiterate the factual and legal basis for the court's determination that the Motion for Sanctions lacked merit.

"[E]xercise of the power granted to the court by Rule 11 requires . . . a determination as to whether, judged by the standard of reasonable party or lawyer, the party or lawyer offended one of the rule's provisions." *The Cadle Co. v. Pratt* (*In re Pratt*), Bankr. No. 00-35214-HDH-7, Adv. No. 00-03600, 2008 WL 2954755, at *3 (N.D. Tex. July 30, 2008) (citing *Lucas v. Spellings*, 408 F.Supp.2d 8, 11 (D.D.C. 2006), *vacated on other grounds*; *see also Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994) ("the standard under which the attorney is measured [under Rule 11] is an objective, not subjective, standard of reasonableness under the circumstances"). Having tested the allegations contained in the Complaint by the

13

reasonableness of the Respondents' prefiling inquiry under the circumstances, the court found that the Respondents acted reasonably by including Swiss-American as a defendant in the Complaint.

This was a simple preference lawsuit. Swiss-American only had to file an answer raising basic affirmative defenses. RJ filed an answer on behalf of Swiss Importing. Subsequently, RJ's counsel satisfied the Trustee that the payments described in the Complaint were in fact prepayments. The Trustee subsequently dismissed his Complaint. The dismissal was not predicated upon Hardy's primary assertion that Swiss-American had merely purchased the assets of a different and unrelated company, Swiss Importing.

The Respondents acted reasonably and prudently in filing suit against both Swiss-American and Swiss Importing. Prior to filing the Complaint, the Trustee and his attorneys knew or understood that, within ninety days of filing its Chapter 11 petition, Affiliated Foods made seven transfers to Swiss-American. Four transfers were made by check to Swiss-American at a specific address in St. Louis, Missouri; the checks appear to have been endorsed by Swiss Importing. Three wire transfers were made with ambiguous references, noting Swiss-American followed by a blank space and the words "Importing Co. [or Company]."

The Trustee made demand on Swiss-American at the same address listed on the checks and received a response from Swiss-American's attorney, Hardy. Hardy raised defenses in two areas: (1) the supposed arm's-length and, presumably, insulating asset purchase transaction between Swiss-American and an unrelated Swiss Importing; and (2) Hardy suggested prepayment and new-value defenses unique to the actual transferee.

The sale transaction occurred one day after the last alleged preferential transfer. Joseph

Hoff, the current president of Swiss-American, had, according to its website, been its president since 2006, a period that predated his April 2009 purchase of the company. The transaction involved, in some general but unspecified way, a more recently formed company with the same exact name, also with Joseph Hoff as president. Swiss Importing did business as Swiss-American, with Joseph Hoff as president. Hardy's Swiss-American had, for a short, overlapping period, existed at the same time that Swiss Importing was doing business under the same exact name, at the same address, and with the same president.

Hardy refused informal requests to provide the asset purchase agreement that might have enlightened and satisfied the Trustee. Spencer Fane created the more recent Swiss-American, with Joseph Hoff as its president. Joseph Hoff served the same role with Swiss Importing doing business as Swiss-American. Postpetition, Swiss-American (under that name and not as RJ, Swiss Importing, RJ doing business as Swiss Importing, or RJ doing business as Swiss-American) filed a proof of claim in the Affiliated Foods bankruptcy. The Proof of Claim was filed at a time when Hardy's Swiss-American was the only Swiss-American in existence. Furthermore, the Proof of Claim related to goods sold prepetition, including during the preference period, all before the most recent Swiss-American existed, and all at the same address in St. Louis, Missouri.

A great deal of uncertainty existed as to the exact nature of the relationship between Swiss-American and Swiss Importing, including whether the entity that received the wire transfers or deposited the checks was the actual creditor to whom Affiliated Foods owed a debt—that fact alone justified a constructive fraud count. Affiliated Foods, if it paid the wrong entity or if the wrong entity got the money, may have received from the transferee less than

15

reasonably equivalent value.

Two entities existed using the same exact name, partly at the same time, with the same president, at the same address, in the same business, with a Proof of Claim that bridged the existence of both, with putatively one or both being the transferees of one or more potentially avoidable transfers.[4]  Faced with an impending statute of limitations and a refusal to supply documentation, reasonable attorneys acting prudently would sue Swiss-American every time. Based upon the court's review of the Respondents' prefiling inquiry and the circumstances involved, the court found that the Respondents acted reasonably under the circumstances in commencing suit against Swiss-American, and the Motion for Sanctions lacked any merit.

### B.  Motion for Reconsideration

At the conclusion of the Motion for Sanctions hearing, the court indicated that each party would bear its own expenses and attorney's fees.  Prior to the entry of a written order, the Respondents filed their Motion for Reconsideration.  The Respondents asked the court to rule on their request for fees and sanctions against Hardy, Spencer Fane, and Swiss-American as set forth in their Answer.  Upon reflection and reconsideration, the circumstances leading up to the filing of the Complaint juxtaposed against a meritless Motion for Sanctions compels the conclusion that an award of reasonable expenses and attorney's fees to the Respondents is warranted.  However, for the reasons discussed below, the court declines to levy sanctions against Hardy, Spencer Fane, or Swiss-American.

---

[4]There is no assertion, and the court makes no finding, that Joseph Hoff or Swiss-American did anything improper in the conduct of its business or the April 2009 transaction. This ruling concerns only the information available to the Respondents at the time of filing the Complaint, and the Respondents' obligations under Rule 9011.

Rule 9011(c)(1)(A) specifically provides that, "[i]f warranted, the court may award to the party prevailing on the motion [for sanctions] the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." *Williamson v. Basco*, No. 06-00012 JMS-LEK, 2008 WL 954173, at *1 (D. Haw. Apr. 3, 2008) (awarding attorney's fees and expenses incurred in defending a Rule 11 motion to defendants under Rule 9011(c)(1)(A) because plaintiff's motion was "substantively without merit").

Swiss-American unnecessarily charted an extremely expensive and onerous course. The Motion for Sanctions unfairly questioned the Respondents' competence and exposed them to significant attorney's fees. In contrast, the Respondents acted in a manner consistent with the affirmative dictates of Rule 9011(b). Neither Swiss-American nor Hardy had a reasonable basis to allege otherwise. The facts suggested liability on the part of Swiss-American. Hardy interposed the asset purchase agreement as a defense but refused the Respondents' efforts to confirm his representations. Swiss-American had the right to decline to informally produce the sales agreement. Swiss-American was not, however, entitled to sanctions against the Respondents for failing to appreciate a document that it would not produce. Even after two hearings, the record remains unclear whether the supposed asset purchase agreement would have insulated Swiss-American as Hardy argued. Neither Hardy nor anyone else ever testified on Swiss-American's behalf.

Swiss-American filed its Motion for Sanctions either for tactical reasons or because it lacked a proper understanding of the legal and factual circumstances that drive a preference action as well as the simple and proper ways to defend and dispose of one. Either purpose should not be at the Respondents' expense. Based upon Swiss-American's conduct in filing and

17

pursuing a meritless Motion for Sanctions, the Respondents are entitled to an award of reasonable expenses and attorney's fees as the prevailing party in opposing the Motion for Sanctions pursuant to Rule 9011(c)(1)(A).

### C.  Motion for Reconsideration–Sanctions and Responsible Party

In their Answer, the Respondents asked for attorney's fees and costs incurred "in defense of the motion pursuant to the provisions of Rule 9011" and for sanctions against Swiss-American, Hardy, and Spencer Fane for a meritless Motion for Sanctions.  (Answer, July 15, 2011, ECF No. 32.)  Having made the determination that fees are "warranted," the court must decide against whom these fees are assessed.  This determination requires an analysis of whether the fee award is a prevailing party fee award properly assessed against Swiss-American, a prevailing party fee award properly assessed against Hardy and Spencer Fane, or a sanction against Hardy and Spencer Fane on the basis that they, as attorneys, violated Rule 9011.  The court finds that this is a prevailing party fee award against Swiss-American, which does not require a violation of Rule 9011, and is not a Rule 9011 sanction against Hardy or Spencer Fane.

### 1.  Attorney's Fees and Expenses Awarded to the Prevailing Party under Rule 9011(c)(1)(A)

Rule 9011 contains two separate sections concerning attorney's fees and costs.  The first is in section (c)(1)(A), which outlines how a sanction effort is initiated.  This section states:

> (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  It shall be served as provided in Rule 7004.  The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).  *If warranted, the court may award to the party prevailing on the motion the reasonable*

*expenses and attorney's fees incurred in presenting or opposing the motion.* Absent
exceptional circumstances, a law firm shall be held jointly responsible for violations
committed by its partners, associates, and employees.

FED. R. BANKR. P. 9011(c)(1)(A) (2012) (emphasis added). Attorney's fees awarded under Rule

9011(c)(1)(A) are characterized in terms of the prevailing party. These are fees incurred in

presenting or opposing a motion for sanctions and are awarded "if warranted."

A fee award under section (c)(1)(A) is not a sanction and does not require a cross-motion

under Rule 9011. In *Tandem Computers, Inc.*, the court, in referencing the attorney's fee

language in Rule 11(c)(1)(A), found that "[t]his sanction is available whether or not the motion

[for Rule 11 sanctions] itself violated Rule 11."[5] *Equal Emp't Opp. Comm'n v. Tandem

Computers, Inc.*, 158 F.R.D. 224, 229 (D. Mass. 1994). The court then awarded attorney's fees

specifically against the client, Tandem Computers, Inc. *Id.* To penalize the lawyers, the court

issued an order to show cause under Rule 11(c)(1)(B) as to why the attorneys for Tandem

Computers, Inc. should not be sanctioned on the basis that Tandem Computers, Inc.'s motion for

sanctions itself violated Rule 11. *Id.* The court ultimately ruled that the motion for sanctions did

violate Rule 11 and that the attorney for Tandem Computers, Inc. should be fined five hundred

dollars to be paid into the court. *Id.* at 230.

---

[5]Although it termed the award of fees as a "sanction," the import of the court's statement
is that the award did not require a violation of Rule 11.

2.  Attorney's Fees and Expenses as a Sanction
under Rule 9011(c)(2)

The second reference to attorney's fees is in Rule 9011(c)(2).  This section limits the

sanctions the court can impose and provides as follows:

> (2) *Nature of Sanction; Limitations.*  A sanction imposed for violation of this
> rule shall be limited to what is sufficient to deter repetition of such conduct . . . .
> [T]he sanction may consist of, or include, directives of a nonmonetary nature, an
> order to pay a penalty into court, or, if imposed on motion and warranted for
> effective deterrence, an order directing payment to the *movant* of some or all of the
> reasonable attorneys' fees and other expenses incurred as a direct result of the
> violation.

FED. R. BANKR. P. 9011(c)(2) (2012) (emphasis added).

This second reference to attorney's fees is solely in the context of sanctions.  Before a

court may impose sanctions, certain conditions must be met under both sections (c)(1)(A) and

(c)(2).  Rule 9011(c)(1)(A) requires a motion made separately from other motions or requests

that describes the specific conduct alleged to have violated the rule, and such motion may not be

filed with or presented to the court until after the expiration of a twenty-one day safe harbor

period within which the responding attorney could dismiss or withdraw the offending pleading.

Under section (c)(2), which concerns an award of attorney's fees or other expenses in the context

of *sanctions*, there are requirements of: (1) "on motion"; (2) "and warranted"; (3) "for effective

deterrence"; and (4) "incurred as a direct result of the violation."  FED. R. BANKR. P. 9011(c)(2).

Accordingly, a sanctions effort must conform to sections (c)(1)(A) and (c)(2).

Thus, each attorney's fee section serves a different purpose.  One section is a prevailing

party award "if warranted" for fees incurred in presenting or opposing the motion for Rule 9011

sanctions.  The other section is a sanction itself that, prior to imposition, must comply with the

procedural safeguards set forth in Rule 9011 and is limited to the fees and expenses incurred as a

20

direct result of the violation, i.e., the offensive pleading.  In *Jawbone, LLC*, the court denied both

an original and a cross-motion for Rule 11 sanctions.  *Jawbone, LLC v. Donohue*, No. 01 CIV.

8066(CSH), 2002 WL 1424587 (S.D.N.Y. June 28, 2002).  In denying the cross-motion for

failure to comply with the safe harbor provisions, the court recognized that the respective

respondents could nevertheless recover fees and costs in defending against each motion for

sanctions, stating:

> Notwithstanding the procedural defect in plaintiff's cross-motion for
> sanctions, the Court has the power to award expenses and attorney's fees to plaintiff
> for its efforts in successfully opposing defendants' motion for sanctions; by the same
> token, the Court has the power to award expenses and attorney's fees to defendants
> for their efforts in successfully opposing plaintiff's cross-motion for sanctions.  Rule
> 11 authorizes a court to "award to the party prevailing on the motion the reasonable
> expenses and attorney's fees incurred in presenting or opposing the motion."  FED. R.
> CIV. P. 11(c)(1)(A); *see also* Advisory Committee Note to 1993 Amendments
> ("[S]ervice of a cross motion under Rule 11 should rarely be needed since under the
> revision the court may award to the person who prevails on a motion under Rule
> 11—whether the movant or the target of the motion—reasonable expenses, including
> attorney's fees, incurred in presenting or opposing the motion.").

*Id*. at *8; *see also Harman v. City of Univ. Park*, No. 3:94-CV-2450-P, 1997 WL 53120, at *1

(N.D. Tex. Feb. 3, 1997) (stating, "[t]his award does not require a cross-motion for sanctions and

is available whether or not the original motion for sanctions itself violates Rule 11") (citations

omitted).  The *Harman* court awarded attorney's fees to the defendant over the plaintiff's

objection, despite finding that the plaintiff's Rule 11 motion was brought in good faith.  *Id.* at *1,

*3 (citations omitted).

This application of Rule 9011's two fee award sections is appropriate given the history of

Rule 9011.  The reasonable expenses and attorney's fee sentence in section (c)(1)(A) was added

to Rule 9011 in 1997.  The Notes of the Advisory Committee on Rules, specifically the 1997

Amendments to Rule 9011, state:

21

This rule is amended to conform to the 1993 changes to FED. R. CIV. P. 11.  For an explanation of these amendments, see the advisory committee note to the 1993 amendments to FED. R. CIV. P. 11.

FED. R. BANKR. P. 9011 advisory committee's note.

The 1993 Advisory Committee Notes to Rule 11 state:

[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.  However, service of a cross motion under Rule 11 should *rarely be needed* since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the *target of the motion*—reasonable expenses, including attorney's fees, incurred in presenting *or opposing* the motion.

FED. R. CIV. P. 11 advisory committee's note (emphasis added).

One interpretation of this language is that the successful respondent to a Rule 9011 motion is entitled to sanctions back against the lawyer who filed the motion on behalf of the original movant, without the necessity of filing a Rule 9011 motion.  The more appropriate reconciliation of the rule and these notes is that the 1997 bankruptcy rule amendment recognizes that typically the respondent is only out fees and costs for responding to and successfully defeating the Rule 9011 motion.  The respondent is not out attorney's fees for the appropriate pursuit of the underlying litigation.  The only bad filing that occasioned more attorney's fees would be the Rule 9011 motion itself.  Thus, the "if warranted" prevailing party standard can make the successful respondent whole.

If, however, the respondent views the Rule 9011 motion itself to be a violation of Rule 9011, the respondent must take the additional steps for sanctions as outlined in Rule 9011(c)(1)(A).  These steps include noticing the opposing attorney, in a separate pleading, outlining the specific conduct in violation of Rule 9011(b), granting him the safe harbor opportunity, and then pursuing additional *sanctions* in the form of a filed Rule 9011 motion.

22

This course represents the unusual, or "rarely be needed" situation, where deterrence is the object.  Any resulting sanction is defined and limited by section (c)(2).  Sanctions could be nonmonetary, a penalty paid to the court, or, if properly initiated, could include fees and costs as a direct result of the violation.  The Respondents did not elect to follow this procedure.

This reading of the rule reconciles the existence of the two attorney fee provisions in the same rule.  It also serves the public policy of making the successful respondent whole, in most instances, without the unnecessary filing of additional Rule 9011 motions.  In her treatise on Rule 11, Georgene Vairo echos this court's reconciliation of the amendment to Rule 11, which incorporated the prevailing party fee provision.

[b] Under the 1993 Amendments

The 1993 amendments to Rule 11 resolved the problem raised in the preceding section.   Rule 11(c)(1)(A) now allows the district court to award prevailing party fee-shifting, and it now provides that "[i]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."  However, the amendments do not require fee-shifting whenever a party prevails on a Rule 11 motion, but courts of appeals have upheld such awards in appropriate situations.

In a sense, the 1993 amendments adopted the Seventh Circuit's "make-whole" approach with respect to the Rule 11 movant.  Additionally, the amendments allow the Rule 11 target to obtain the cost of successfully defending a Rule 11 motion.  Accordingly, this provision should result in the elimination of cross-motions for Rule 11 sanctions targeting the movant's Rule 11 motion, since one is no longer necessary in order to be able to recover the expenses of defending against the Rule 11 motion.  For instance, in *Patelco Credit Union v. Sahni*, the Ninth Circuit determined that when a party opposing a Rule 11 motion is counter-requesting fees, it need not comply with the safe-harbor and separate document requirements of Rule 11(c)(1)(A).  The court quoted the 1993 Advisory Committee Note for support, as follows:

"As under former Rule 11, the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions.  However, service of a cross motion under Rule 11 should rarely be needed since under the revision the court may

23

award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion—reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."

Rule 11(c)(1)(A) not only solves the fees on fees problem discussed in the previous subsection, but it also complements the overriding philosophy of the 1993 amendments to Rule 11. As discussed in many parts of this Chapter, the Advisory Committee intended the 1993 amendments to de-emphasize fee-based sanctions. A concern expressed at the hearings in February of 1991 was that a de-emphasis on compensatory sanctions would create a disincentive to bring Rule 11 motions to attack frivolous papers. By providing a fee-shifting provision, parties would still have an incentive to move for sanctions, because even if the sanction imposed does not redound to the benefit of the prevailing party, that party may still be reimbursed for its costs, including its attorney's fees, for combating the Rule 11 violation. At the same time, the provision provides some protection for targets of frivolous Rule 11 motions, because they may be able to recover their costs and fees under Rule 11(c)(1)(A).

. . . .

Although fee-shifting is generally disfavored under the 1993 amendments, the provision regarding the ability to recover the fees and expenses incurred regarding a Rule 11 motion was designed as a disincentive to the filing of counter Rule 11 motions claiming that the first one was frivolous, with the ultimate goal of decreasing the volume of Rule 11 litigation.

GEORGENE M. VAIRO, AMERICAN BAR ASSOCIATION: RULE 11 SANCTIONS § 9.04 (2004), *available at* Westlaw ABA-SANCT s 9.04 (footnotes omitted).

Stated succintly, attorney's fees under section (c)(1)(A) are for the prevailing party, either the Rule 9011 movant or the respondent, "if warranted." Attorney's fees under section (c)(2) are specifically included as a potential sanction for a violation of the rule, awarded against an attorney, imposed on motion, warranted for effective deterrence, and must be incurred as a direct result of the violation.

24

### 3. Responsible Party

As this is a prevailing party fee award, it follows that the award should be against Swiss-American as the losing party, not Hardy or Spencer Fane.  Unfortunately, Rule 9011 is not a complete model of clarity in this regard.  In dealing with Rule 9011 motions, parties and their attorneys tend to think in terms of penalizing attorneys.  That is the primary impetus and thrust of a Rule 9011 motion.  The inclination to penalize attorneys is not diminished by the fact that, in section (c)(1)(A), the "if warranted" language is immediately followed by a sentence that reads:  "Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees."  FED. R. BANKR. P. 9011(c)(1)(A).  This language certainly fosters the implication that attorney's fees to the prevailing Respondents could be awarded against Hardy and Spencer Fane.

However, the language concerning a law firm's liability for the acts of its partners and associates must be appreciated in the entirety of section (c)(1)(A), which recites that a separate motion is required to initiate a sanctions effort.  This motion must "describe the specific conduct alleged to violate" the rule and may not be filed or presented to the court until after the twenty-one day safe harbor period has expired.  FED. R. BANKR. P. 9011(c)(1)(A).  Section (c)(1)(A) goes on to include joint responsibility for law firms, absent exceptional circumstances, "for *violations* committed by its partners, associates, and employees."  FED. R. BANKR. P. 9011(c)(1)(A) (emphasis added).  Thus, the principle import of this section deals with how to initiate a sanctions effort and the inclusiveness of any sanction for a violation.  If a *violation* of the rule has occurred, a court should properly look to section (c)(2) to determine the nature of the sanctions, which can include attorney's fees "if imposed on motion and warranted for effective

25

deterrence [and] incurred as a direct result of the violation." FED. R. BANKR. P. 9011(c)(2).  The

attorney's fee language in section (c)(1)(A) is not a sanction.  It is merely a prevailing party

award directed solely for the attorney's fees "incurred in presenting or opposing the

motion"—not fees "incurred as a direct result of the violation [of the rule]" as contemplated in

section (c)(2).  FED. R. BANKR. P. 9011(c)(1)(A), (2).  The court in *Divane* stated:

> The 1993 amendments to Rule 11(c)(2) limited the amount of attorneys' fees that
> may be imposed as a sanction, contemplating the award of reasonable attorneys' fees
> and costs "incurred as a direct result of the violation," but endorsed the use of
> attorneys' fees as a sanction. FED. R. CIV. P. 11(c)(2).  We therefore find no basis for
> the contention that the award of reasonable attorneys' fees constitutes an abuse of
> discretion.

*Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999).

In *Cadle*, a creditor, the Cadle Company ("Cadle"), sought to sanction the debtor's

counsel in a Rule 9011 motion.  2008 WL 2954755, at *2.  Cadle lost, and the court awarded the

attorney his reasonable attorney's fees and expenses pursuant to Rule 9011(c)(1)(A).[6]  *Id.*  The

*Cadle* court awarded fees under this section against the movant, Cadle.[7]  *Id.* at 4.  In *Browne*, the

district court, while using the term "sanctions," did, under Rule 11(c)(1)(A), award attorney's

fees against the plaintiffs, not their counsel, to the defendants victimized by an unsuccessful Rule

---

[6]The court in *Cadle* tended to use the term "santions" in this context, a term with which
this court respectfully disagrees.

[7]The court notes that *Cadle* does cite a Texas district court decision where the court
awarded fees directly against the attorney who filed an unsuccessful Rule 11 motion for a client.
*See Atlantic Recording Corp. v. Heslep*, No. 4:06-cv-132-Y, 2007 WL 1435395 (N.D. Tex. May
16, 2007).  This court cannot concur that doing so is proper without a counter Rule 9011 motion.
However, it may be that the federal district court sanctioned the attorney under its inherent
powers, powers which this court declines to exercise in the present case.

11 motion. *Browne v. Nat'l Ass'n of Sec. Dealers, Inc.,* No. 3:05-cv-2469-G, 2006 WL 3770505 (N.D. Tex. Dec. 14, 2006).

In *Harman*, the court ordered the lawyer for the moving party, not the moving party itself, to pay the attorney's fee apparently because the underlying subject of the motion for sanctions involved issues that had been resolved at a pretrial conference. 1997 WL 53120, at *1. In doing so, the *Harman* court may have simply been exercising its inherent powers, or it may have interpreted the rule to allow cross-sanctions against a lawyer without a Rule 11 motion. This court, as discussed above and below, declines to do so. *See In re Kirk-Murphy Holding, Inc.*, 313 B.R. 918 (Bankr. N.D. Fla. 2004) (awarding prevailing party fees under Rule 9011(c)(1)(A) to the successful respondents to a sanctions motion against the movant, Kirk-Murphy Holding, Inc.).

A certain logic exists to the Respondents' position that Hardy and/or Spencer Fane should be the responsible party. Rule 9011 motions are lawyer generated and directed. Lawyers advise their clients, the actual parties to the litigation, that they believe the opposing counsel has violated Rule 9011. Notice is given followed by a safe harbor period. If the offending pleading is not withdrawn, the attorney, in the name of his client, files a motion for sanctions directed against the opposing attorneys themselves. However, Rule 9011 does draw a distinction between an award of fees for prosecuting or defending against a Rule 9011 motion and the imposition of sanctions. There are two attorney fee sections in Rule 9011; each serves a different purpose.

27

Attorneys are the targets of Rule 9011 motions and are the ones sanctioned.[8]  If the court determines that the motion is well-founded, it may sanction the lawyers who failed to comply with Rule 9011(b).  The rule specifically limits the nature of sanctions, emphasizing deterrence for a violation of the rule.  Sanctions may also include payment to the movant of some or all of its attorney's fees (unrelated to presenting the actual motion for sanctions itself) if imposed on motion, warranted for effective deterrence, and resulting from the violation itself.

Swiss-American is the movant on the Motion for Sanctions, not Hardy or Spencer Fane. Had Swiss-American been successful, this court could have sanctioned the Respondents for a violation of the rule in a manner sufficient to deter repetition of such conduct.  These sanctions could be nonmonetary or a penalty paid to the court.  Additionally, "if imposed on motion[9] and warranted for effective deterrence," the court could also order that the Respondents pay to the movant, Swiss-American, some or all of its reasonable attorney's fees and other expenses "incurred as a direct result of the violation."  FED. R. BANKR. P. 9011(c)(2).  This potential fee award is specifically a *sanction* for the fees and costs incurred as a direct result of the offending pleading, here the Complaint, filed without a reasonable basis in law or fact in violation of Rule 9011.  The attorney's fees under section (c)(2) could be those fees incurred in filing a motion to dismiss, answering, discovery, or otherwise defending.  Swiss-American could have also sought its attorney's fees and costs "[i]f warranted" for "presenting . . . the motion."  FED. R. BANKR. P. 9011(c)(1)(A).  Thus, there can also be a prevailing party fee award related solely to prosecuting

---

[8]Only rarely are there circumstances that dictate shifting responsibility to or including the opposing party whose attorneys are the subject of the Rule 9011 sanction effort.

[9]Here, the Motion for Sanctions suffices.

the motion for sanctions itself.  This award does not require a finding that any Rule 9011 violation occurred.

Here, Swiss-American was unsuccessful in its pursuit of Rule 9011 sanctions.  The successful but aggrieved Respondents are not without recourse.  The fee language goes both ways: "If warranted, the court may award to the *party prevailing* on the motion the reasonable expenses and attorney's fees incurred in presenting *or opposing* the motion."  FED. R. BANKR. P. 9011(c)(1)(A) (emphasis added).  In this instance, the award of fees to the Respondents is warranted.  The Respondents, specifically and generically in any Rule 9011 dispute, are not out attorney's fees in the otherwise appropriate pursuit of the underlying litigation.  Rule 9011 respondents are out their attorney's fees in successfully opposing the Rule 9011 motion and, if warranted, may be awarded those fees and costs.  However, there is no Rule 9011 motion against Hardy or Spencer Fane alleging a violation of Rule 9011 where a sanction might be appropriate to deter future conduct as contemplated by section (c)(2).

It is apparent that some courts assign responsibility to the attorneys by exercising their inherent powers.  This court declines to do so.  This refusal has a basis.  Specifically, a Rule 9011 motion is filed on behalf of a party to litigation.  It is directed not at the other party but instead specifically names the other party's counsel.  The responding attorneys have already been put on notice and are aware of the questioned conduct with a commensurate safe harbor period within which to dismiss or withdraw the offensive pleading.  If well-founded, the court could issue nonmonetary directives or require the responding attorneys to pay a penalty into the court.  Additionally, the court could award, as sanctions, attorney's fees that the moving party

incurred "as a direct result of the violation." FED. R. BANKR. P. 9011(c)(2).  The court could also award attorney's fees for "presenting . . . the motion." FED. R. BANKR. P. 9011(c)(1)(A).

Conversely, as explained above, a successful responding party has the ability to ask the court to award fees if warranted.  In most instances, this award will make the respondents whole. In these circumstances, the fees should be awarded against the moving party, not its counsel. Simply filing an unsuccessful Rule 9011 motion should not carry with it the ominous threat that the movant's attorney might be personally liable for the respondent's attorney's fees.  That is a procedurally deficient penalty for simply filing what the attorney believes is a proper motion for sanctions.  If, however, the Rule 9011 motion has not been filed for proper purposes and itself potentially violates Rule 9011, then the offending attorney for the movant should be entitled to the same procedural safeguards afforded to the original respondents.

Accordingly, for sanctions to lie in this case, Rule 9011(c)(1)(A) requires a motion made separately from other motions or requests, that describes the specific conduct alleged to have violated the rule, and such motion may not be filed with or presented to the court until after a twenty-one day safe harbor period within which Hardy could have dismissed or withdrawn the Motion for Sanctions.  That process did not occur in this instance.

However, under the same Rule 9011(c)(1)(A), a prevailing party fee award can be awarded, and such award is not a sanction and does not require a cross-motion under Rule 9011. This application of Rule 9011 awards prevailing party fees "if warranted," regardless of whether a Rule 9011 violation has occurred, restricts sanctions to violations of the rule, encourages sanctions solely for deterrence, preserves all the notice and safe harbor protections afforded the

30

accused, and makes the Respondents whole without the necessity of separate or cross-motions, thus avoiding excessive Rule 9011 filings.

Although this court is confident that Hardy was the driving force behind the meritless Motion for Sanctions, he has not been afforded the benefits of a proper Rule 9011 motion or cross-motion. The aggrieved Respondents in this instance are made whole by the award of their attorney's fees from Swiss-American. Further, if a proper cross-motion had been filed, the fee award enuring to the benefit of the Respondents in the nature of a Rule 9011(c)(2) sanction would be no greater than that awarded in this opinion. For the reasons stated above, the Respondents are entitled to, as the prevailing party, attorney's fees and expenses from Swiss-American for successfully defending against the unfounded Motion for Sanctions. The Motion for Reconsideration is denied on the issue of attorney's fees and costs as a sanction.

### D.  Fee Award

Swiss-American's Motion for Sanctions lacked merit. The Respondents, as the prevailing parties, are entitled to an award of reasonable expenses and attorney's fees incurred in opposing the Motion for Sanctions pursuant to Rule 9011(c)(1)(A). The court must now analyze the reasonableness of the expenses and attorney's fees incurred by the Respondents. In their Motion for Reconsideration, the Respondents requested that the court award reasonable expenses and attorney's fees to Duke and to the Respondents, Gibson and Streetman, in defending the Motion for Sanctions. For the reasons stated below, an award of Duke's fees is appropriate; an award of Gibson and Streetman's fees is not.

1.  Duke's Fees

In the Eighth Circuit, the lodestar approach is generally used to calculate reasonable attorney's fees.  *In re Morrison*, 231 B.R. 754, 758 (Bankr. W.D. Mo. 1999) (citations omitted). "The lodestar amount is determined by multiplying the number of hours reasonably expended in a case by a reasonable hourly rate."  *Id*.  "The lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and expertise of counsel, the quality of representation, and the results obtained."  *Id*.  "Only in rare and exceptional circumstances, supported by specific evidence on the record, is an upward adjustment of the lodestar amount warranted."  *Id*. (citing *Novelly v. Palans* (*In re Apex Oil Co.*), 960 F.2d 728, 732 (8th Cir. 1992)).

The Respondents retained Duke to represent them solely in the context of the Motion for Sanctions.  At the hearing on the Motion for Reconsideration, the Respondents introduced an invoice detailing Duke's expenses of $379.38 and attorney's fees of $16,597.50 for a total of $16,976.88.  Streetman, a named Respondent and the senior partner of Respondent Streetman, Meeks & Gibson, PLLC, testified that he considered Duke's expenses and attorney's fees to be reasonable.

The Respondents are entitled to the entirety of Duke's requested expenses and attorney's fees.  At the hearing on the Motion for Reconsideration, Swiss-American did not cross-examine Streetman, present any testimony, or otherwise question the reasonableness of Duke's expenses and attorney's fees.  The court has independently reviewed Duke's invoice and finds that it is reasonable in substance and amount.  Further, in applying the lodestar approach, the court finds that the hours expended and the hourly rate charged by Duke are reasonable.  As such, the

Respondents are awarded the sum of $16,976.88, representing Duke's expenses and attorney's fees.

2.  Gibson and Streetman's Fees

At the hearing on the Motion for Reconsideration, the Respondents also introduced an invoice representing attorney's fees and expenses charged by Gibson and Streetman solely with respect to the Motion for Sanctions.  The invoice reflected expenses of $438.10 and attorney's fees of $28,917 for a total of $29,355.10.  In their fee application, Gibson and Streetman billed their time at an hourly rate for all of their efforts in defending against the Motion for Sanctions just as if they were representing a client or monitoring their fees as pro se litigants.  Swiss-American did not cross-examine Streetman or offer testimony contradicting the reasonableness of Gibson and Streetman's fees and expenses.

Gibson and Streetman are not entitled to an award based on their hourly fees and expenses.  In *Ray*, Massengale sued a number of defendants, one of whom, Neil Kolner ("Kolner"), represented himself.  *Massengale v. Ray*, 267 F.3d 1298, 1299 (11th Cir. 2001).  Kolner, an attorney, not only succeeded in having Massengale's complaint dismissed, but he also successfully prosecuted a motion for Rule 11 sanctions.  *Id.* at 1300.  The district court compensated Kolner in the sum of $25,000, representing the value of his attorney's fees for the time he spent on the case as a result of Massengale's conduct.  *Id.* at 1301.  On appeal, the Eleventh Circuit Court of Appeals reversed the district court by holding that a pro se litigant was not entitled to an award of attorney's fees as sanctions under Rule 11.  *Id.* at 1302–05.

Specifically, the court stated as follows:

> While it is true that the purpose behind Rule 11 sanctions is deterrence and punishment, and not to encourage litigants to retain independent counsel, we cannot

33

conclude that Rule 11 allows for an award of attorneys' fees to a *pro se* litigant as a sanction. When a district court determines that an "attorney or unrepresented party" has violated Rule 11(b), it "may . . . impose an appropriate sanction upon the . . . part[y] that . . . violated subsection (b) . . . ." The sanction imposed may include "an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Because a party proceeding *pro se* cannot have incurred attorney's fees as an expense, a district court cannot order a violating party to pay a *pro se* litigant a reasonable attorney's fee as part of a sanction. In *Ray*, we observed that:

> [T]he word "attorney" generally assumes some kind of agency (that is, attorney/client) relationship. The fees a lawyer might charge himself are not, strictly speaking, "attorney's fees." And, where a lawyer represents himself, legal fees are not truly a "cost" of litigation-no independent lawyer has been hired (or must be paid) to pursue the . . . complaint.

> Because Kolner did not incur legal fees as a cost or expense in representing himself, the district court erred in awarding $25,000 in attorney's fees to Kolner as a sanction upon Massengale. The award violated the plain language of Rule 11, and the district court abused its discretion in imposing it.

*Id.* at 1302–03 (internal citations omitted).

The holding in *Ray* is equally compelling in considering attorney's fees either as a sanction or as a prevailing party fee award. In construing a similar statute, the court in *Pickholtz* stated:

> The rule requires that the expenses be "incurred." We consider that term to be controlling on the issue, as the term means "[t]o have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively[; t]o become liable or subject to." Thus, one cannot "incur" fees payable to oneself, fees that one is not obliged to pay. Moreover, the word "attorney" connotes an agency relationship between two parties (client and attorney), such that fees a lawyer might charge himself are not "attorney fees." Nor are such fees a payable "expense," as there is no direct financial cost or charge associated with the expenditure of one's own time.

*Pickholtz v. Rainbow Tech., Inc.*, 284 F.3d 1365, 1375 (Fed. Cir. 2002) (internal citations omitted).

When personally attacked and to benefit from the dispassionate advice and advocacy of a skilled attorney, the Respondents hired Duke to represent them in the context of the Motion for Sanctions. Duke provided those services, and the Respondents incurred fees and expenses. To the extent that Gibson or Streetman did research or drafting that otherwise would have fallen to Duke, they did so for their own benefit. Ultimately, absent this court's award, they risked being responsible for all of Duke's fees. While the court is not without sympathy for the time and efforts expended by Gibson and Streetman, they are, however, no different than any other party represented by counsel who suffers loss in time and money as a result of unfounded litigation. As such, Gibson and Streetman may not be compensated for their attorney's fees and expenses.

### IV.  Conclusion

In light of the facts known to them at the time, coupled with Hardy's unwillingness to supply perhaps dispositive documentation, the Respondents acted reasonably under the circumstances in naming Swiss-American in the Complaint. Swiss-American did not have a reasonable basis for a Rule 9011 motion. Swiss-American's Motion for Sanctions is denied. Fees are warranted, and the Respondents are awarded reasonable expenses and attorney's fees in the amount of $16,976.88 against Swiss-American. Pursuant to Federal Rule of Bankruptcy Procedure 7054, the court will enter a separate judgment to this effect. The Respondents' request for the same fees and costs as a sanction against Swiss-American, Hardy, or Spencer Fane is denied.

35

IT IS SO ORDERED.

Dated this 6th day of June, 2012.

_____
RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc:  Thomas S. Streetman, Attorney for the Trustee
     Robert Bynum Gibson, III, Attorney for the Trustee
     William David Duke, Attorney for the Trustee
     Richard L. Cox, Trustee
     Ryan C. Hardy, Attorney for Swiss-American, Inc.
     Nicholas A. Franke, Attorney for Swiss-American, Inc.
     Andrew King, Attorney for Swiss-American, Inc.
     Jess L. Askew, Attorney for Swiss-American, Inc.
     Lance R. Miller, Attorney for Swiss-American Importing Company
     R. Scott Moore, Attorney for Swiss-American Importing Company